*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VICTORIA L. SHEFFIELD,

        Plaintiff-Appellant,

and

AUBREY MCDONALD, MARY L. HALSTED, and
TERRY W. STRAUSER,

        Plaintiffs,

v

CHIPPEWA COUNTY and CHIPPEWA COUNTY
TREASURER,

        Defendants-Appellees.

UNPUBLISHED
July 28, 2026
11:21 AM

No. 374645
Chippewa Circuit Court
LC No. 20-016268-CZ

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

This is another case related to tax-foreclosure sales of property by local units of government addressing the question of what happens with excess proceeds that result from these sales.

Defendant, Chippewa County (the County), based on plaintiffs' property tax delinquencies and acting as the foreclosing governmental unit (FGU) through its treasurer, foreclosed on the McDonald, Sheffield, and Halstead/Strauser properties in 2016, 2017, and 2018, respectively.[1] At

---

[1] "An FGU may be either the treasurer of the county in which the property is located or, if the county treasurer has elected to have the state foreclose on the property, the state itself." *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166320); slip op at 4 n 2, citing MCL 211.78(8)(a). In this case, plaintiffs alleged "[t]he County and the Treasurer chose to be [an FGU]."

the time, Michigan's General Property Tax Act (GPTA), MCL 211.1 *et seq*., authorized the FGU to retain proceeds from the sales in excess of what was owed in taxes, interests, penalties, and fees.

On July 17, 2020, our Supreme Court in *Rafaeli v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), held that government retention of surplus proceeds under the GPTA exceeding the tax liability owed, as well as interest, penalties, and fees incurred to collect those taxes, violates the Takings Clause of Michigan's 1963 Constitution. Const 1963, art 10, § 2.

On December 22, 2020, in response to *Rafaeli*, our Legislature passed 2020 Public Act 255 and 2020 Public Act 256 to amend the GPTA to address these issues, and these amendments were codified in MCL 211.78t with immediate effect. "MCL 211.78t provides the exclusive state law mechanism for persons with claims like plaintiffs present here to recover surplus proceeds." *Armour v Kalamazoo Co*, ___ Mich App ___, ___; ___ NW3d ____ (2026) (Docket No. 375423); slip op at 2, citing MCL 211.78t(11) and *Hathon v State of Michigan*, ___ Mich ___, ___; 17 NW3d 686, 686-687 (2025).

Several years later, on July 29, 2024, in *Schafer v Kent Co*, 515 Mich 1, 29-41, 45-46; 29 NW3d 25 (2024), our Supreme Court determined that *Rafaeli* and MCL 211.78t each apply retroactively to tax foreclosure sales occurring by that date of decision and effective date of enactment.

On January 4, 2021, plaintiffs filed a class-action complaint on behalf of themselves and "a class of similarly situated individuals and entities," and then filed an amended complaint on February 22, 2021, asserting state tort and state and federal constitutional claims seeking "unpaid 'just compensation' and other monetary damages," including surplus proceeds from the tax-foreclosure sales of their formerly-owned properties, as well as related attorney fees, costs, and interest.

Plaintiffs appeal as of right from the trial court's order granting summary disposition of their state tort and state and federal constitutional claims with prejudice pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) based upon the just-discussed changes in the law occurring subsequent to the tax foreclosure sales of their properties and plaintiffs failing to first follow the mechanism of MCL 211.78t before bringing their separate claims.

We find that the trial court's dismissal with prejudice was in error and that its grant of summary disposition pursuant to MCR 2.116(C)(8) should have been made without prejudice to plaintiffs bringing their state tort and state and federal constitutional claims after they have completed the process of recovering their surplus proceeds pursuant to MCL 211.78t. The sole

remaining plaintiff[2] having now completed proceedings to recover surplus proceeds pursuant to MCL 211.78t,[3] we find that she may now avail herself of any procedural mechanisms available to pursue her remaining claims, which she contends include claims to recover interest, costs, attorneys fees, and 5% sales commission taken from the proceeds of the foreclosure sale.[4] As in *Armour*, "[b]ecause we agree with the trial court that dismissal [without prejudice] was appropriate for failure to first follow the procedures of MCL 211.78t, we need not address the merits of plaintiff['s] constitutional and other claims or potential damages" and "[w]e take no position as to the validity of any such constitutional or other claim that plaintiffs may raise in the context of the proceedings commenced under MCL 211.78t." *Armour*, ___ Mich App at ___, ___; slip op at 2, 5. We accordingly affirm the trial court's order granting summary disposition pursuant to MCR 2.116(C)(8), but reverse that ruling to the extent it was made with prejudice, and remand to the trial court for entry of an order of dismissal without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In light of this being an appeal from a grant of summary disposition pursuant to MCR 2.116(C)(8), the underlying facts are not in dispute and are taken as alleged in plaintiffs' amended complaint.

Plaintiff Victoria L. Sheffield owned property located in Sault Ste. Marie. Plaintiff Aubrey McDonald is the personal representative of the estate of Eva McDonald, who owned property located in Paradise.[5] Plaintiffs Mary L. Halsted and Terry W. Strauser owned property located in Kincheloe. These respective property owners became delinquent in their property taxes and, in accordance with the GPTA, the County, acting as the FGU through its treasurer, foreclosed on the McDonald, Sheffield, and Halstead/Strauser properties in 2016, 2017, and 2018, respectively. At

---

[2] Following the filing of the parties' briefing in this appeal, plaintiffs Aubrey McDonald and Mary L. Halstead were each dismissed as parties by stipulation. *Sheffield v Chippewa Co*, unpublished order of the Court of Appeals, entered February 24, 2026 (Docket No. 374645); *Sheffield v Chippewa Co*, unpublished order of the Court of Appeals, entered May 11, 2016 (Docket No. 374645). Further, plaintiff Terry W. Strauser was dismissed without prejudice upon the parties stipulating that he is deceased. *Sheffield v Chippewa Co*, unpublished order of the Court of Appeals, entered May 28, 2016 (Docket No. 374645). Accordingly, plaintiff Victoria L. Sheffield is the sole remaining appellant in this appeal.

[3] As confirmed by her counsel during oral argument on June 2, 2026.

[4] Including potentially moving to file a counterclaim to pursue such claims in the foreclosure case, which would relate back to the date of the original filing. MCR 2.203(E); MCR 2.118(D).

[5] The amended complaint asserts that "[p]laintiff Aubrey McDonald was the owner." However, information presented in this appeal indicates that Eva McDonald actually owned the property at the time of foreclosure. Eva died on June 9, 2018, after which plaintiff Aubrey McDonald was appointed personal representative of her estate.

the time of foreclosures, the fair-market value of each property exceeded the attendant tax delinquency.[6]

Defendants sold plaintiffs' foreclosed properties at public auction, with each of the sales generating proceeds in excess of the tax delinquency. Defendants retained the proceeds from the tax-foreclosure sales and eventually deposited them in the county's general fund, consistent with the then-applicable provisions of the GPTA that permitted FGUs to retain surplus proceeds.

"This portion of the GPTA was declared a violation of the Takings Clause of the Michigan Constitution, Const 1963, art 10, § 2 in *Rafaeli*, 505 Mich 429." *Armour*, ___ Mich App at ___; slip op at 3.

On December 22, 2020, in response to *Rafaeli*, the Legislature enacted 2020 PA 255 and 2020 PA 256, with immediate effect, "thereby providing a process for plaintiffs to recover surplus proceeds as defined in the statute." *Armour*, ___ Mich App at ___; slip op at 3, citing MCL 211.78t. These acts were "intended to codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA] as recognized by the Michigan supreme court in *Rafaeli* . . . ." 2020 PA 256, enacting § 3. Relevant here, 2020 PA 256 added MCL 211.78t, which "established a process for the administration of claims against [FGUs]." *Schafer v Kent Co*, 515 Mich 1, 12; 29 NW3d 25 (2024). That is, MCL 211.78t provides "a statutory framework by which a former owner of real property could claim the surplus proceeds that remained, if any, after a foreclosing government sold the property and satisfied that owner's tax debt and related fees." *In re Petition of Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678, 683; 20 NW3d 337 (2023).

In part pertinent to this appeal, MCL 211.78t provides:

(1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under section 78m, subject to the following:

\* \* \*

(b) For foreclosed property transferred or sold under section 78m before July 18, 2020, both of the following:

(*i*) A claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively.

---

[6] Plaintiffs reasoned that the fair-market value of their foreclosed properties was at least two times the State Equalized Value.

(*ii*) Subject to paragraph (i) the notice of intention must be submitted pursuant to subsection (6).

\* \* \*

(6) For a claimant seeking remaining proceeds[7] from the transfer or sale of a foreclosed property transferred or sold under section 78m pursuant to this subsection, the claimant must notify the foreclosing governmental unit using the form prescribed by the department of treasury under subsection (2) in the manner prescribed under subsection (2) by the March 31 at least 180 days after any qualified order.  By the following July 1, the foreclosing governmental unit shall provide each claimant seeking remaining proceeds for the property and notifying the foreclosing governmental unit under this subsection with a notice relating to the foreclosed property in the form and manner provided under subsection (3).  To claim any applicable remaining proceeds to which the claimant is entitled, the claimant must file a motion with the circuit court in the same proceeding in which a judgement of foreclosure was effective under section 78k by the following October 1.  The motion must be certified and include [certain listed information].

\* \* \*

(11) This section is the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state . . . .

On January 4, 2021, plaintiffs filed a class-action complaint on behalf of themselves and "a class of similarly situated individuals and entities," and then filed an amended complaint on February 22, 2021, asserting claims for common law and statutory conversion, unjust enrichment, and defendants' violations of Article 10, § 2 of the Michigan Constitution and the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and seeking "unpaid 'just

---

[7] MCL 211.78t(12)(b) defines "remaining proceeds" as

the amount equal to the difference between the amount paid to the foreclosing governmental unit for a property due to the sale or transfer of the property under 78m and the sum of all of the following:

(*i*) The minimum bid under section 78m.

(*ii*) All other fees and expenses incurred by the foreclosing governmental unit pursuant to section 78m in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid.

(*iii*) A sale commission payable to the foreclosing governmental unit equal to 5% of the amount paid to the foreclosing governmental unit for the property.

The "minimum bid" is the minimum amount for which the FGU may sell the property in a tax-foreclosure sale, and "must include all of the delinquent taxes, interest, penalties, and fees due on the property . . . ."  MCL 211.78m(16)(c).

compensation' and other monetary damages," including surplus proceeds from the tax-foreclosure sales of their formerly-owned properties as well as related attorney fees, costs, and interest.

In lieu of filing an answer to plaintiffs' amended complaint, on March 15, 2021, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(6) (prior pending action), (C)(7) (governmental immunity), and (C)(8). That motion contended that plaintiffs and the putative class were required to "seek redress in accordance with the statutory procedures that now exist, particularly MCL 211.78t, before resorting to litigation"; plaintiffs' claims are already asserted as members of putative classes already litigating the same claims in Michigan and federal courts; the claims lacked substantive merit; and defendants were entitled to governmental or qualified immunity with respect to certain claims. The parties then stipulated to a stay of proceedings to await "an issued decision on federal class certification" in pending parallel federal cases (which stay entered May 3, 2021). While the case remained stayed for more than three years, Michigan's appellate courts issued caselaw addressing the applicability and constitutionality of MCL 211.78t.

Of especial note, on October 26, 2023, in *Muskegon Co Treasurer*, which involved tax-foreclosure sales of properties that occurred after *Rafaeli* was decided and after the Legislature enacted MCL 211.78t (post-*Rafaeli*), this Court found that, by its plain language, the Legislature intended MCL 211.78t as the *exclusive mechanism* for property owners to recover their surplus proceeds. *Muskegon Co Treasurer*, 348 Mich App at 688. See also MCL 211.78t(11). This panel's recent, published *Armour* decision concisely further summarizes *Muskegon Co Treasurer*, noting that it

> explained that "[t]he specific language of MCL 211.78t indicates our Legislature's intent for the statute to serve as the sole mechanism by which former property owners can recover proceeds remaining after the sale or transfer of their foreclosed properties and the satisfaction of their tax debt and related costs." [*Muskegon Co Treasurer*, 348 Mich App] at 691. The procedures of MCL 211.78t "impose[] a reasonable, minimal burden on former owners to advise the FGU of their intent to exercise" their "constitutionally-protected right to proceeds remaining after the satisfaction of their tax debt and associated costs . . . ." *Id*. at 694-695. The statutory scheme comports with the requirements of due process, informing former property owners of their rights, instructing them as to how to express their intent to exercise such rights, and mandating that the FGU provide them surplus proceeds in accordance with MCL 211.78t. *Id*. at 697. This statutory scheme adequately protects citizens' constitutionally protected rights under the Takings Clause of either the federal or state constitution; and plaintiffs' failure to avail themselves of it constituted a forfeiture of such rights. *Id*. at 701-704. [*Armour*, ___ Mich App at ___; slip op at 8 (first and third alterations in original).]

Next, although the plaintiffs' tax-delinquency foreclosure sales in this case occurred before *Rafaeli* was decided (pre-*Rafaeli*), the Michigan Supreme Court's subsequent July 29, 2024 decision in the consolidated cases of *Schafer v Kent Co* and *Hathon v Michigan*, made clear that the foregoing analysis from *Muskegon Co Treasurer* applies equally to pre-*Rafaeli* cases. As succinctly summarized in *Armour* (which is likewise pre-*Rafaeli*), *Schafer* held

first, that *Rafaeli*'s holding applied retroactively, and also that the "detailed process for administration of claims filed for surplus proceeds" codified in MCL 211.78t applied retroactively as well. [*Schafer*, 515 Mich] at 43-45. In the words of our Supreme Court, "MCL 211.78t creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Id*. at 45. Moreover, the "statute asserts unambiguously that claims regarding sales occurring prior to *Rafaeli* 'must' comply with the statute, including certain notice requirements and procedures if *Rafaeli* is ever applied retroactively." *Id*. at 46. To facilitate retroactive application, the Supreme Court delineated a statute of limitations for claimants whose claims were "cut short by the retroactive application of 2020 PA 256" in that such claims "will not be barred from relief under statutes of limitations if their claims are filed within the time they had remaining under applicable statutes of limitations on December 22, 2020, the time 2020 PA 256 became law, and running from the date of this opinion." *Id*. at 49-50. [*Armour*, ___ Mich App at ___; slip op at 8.]

As was the case in *Armour*, "[t]here is no evidence in the record that any plaintiff was prevented from filing a notice of intention outside of this statutory limitations period." *Id*.

Defendants then filed renewed motions for summary disposition of plaintiffs' state and federal claims pursuant to pursuant to MCR 2.116(C)(7) and MCR 2.116(C)(8) on October 23, 2024. As in *Armour*, "[t]he primary question here is whether plaintiffs were required to first follow the procedures in MCL 211.78t to recover their surplus proceeds before pursuing other relief." *Armour*, ___ Mich App at ___; slip op at 3.

At the January 27, 2025 hearing on the renewed motions, plaintiffs additionally argued that MCL 211.78t did not offer a mechanism for the complete relief to which they were entitled because MCL 211.78t(9) requires the FGU to withhold 5% of the proceeds as a sales commission, and did not provide for interest from the time of the foreclosure to the payment of the proceeds. The trial court stated on the record that it was granting the renewed motions based upon *Muskegon Co Treasurer*'s holding that MCL 211.78t is the exclusive mechanism for property owners to recover their surplus proceeds from the tax foreclosure sale of property and *Schafer*'s subsequent holding that *Rafaeli*'s holding and MCL 211.78t apply retroactively, and that *Muskegon Co Treasurer* applies equally to pre-*Rafaeli* cases such as the present case. The trial court subsequently entered a February 7, 2025 order granting defendants' renewed motions for summary disposition of plaintiffs' state and federal claims in full "for the reasons stated on the record," and dismissing those claims with prejudice. Plaintiffs filed a timely claim of appeal.

On March 28, 2025, each plaintiff, through counsel, filed a timely notice of intention to claim their interest in the surplus proceeds from the tax-foreclosure sales of their formerly owned

property with defendants as required under MCL 211.78t(6).[8,9]  On August 12, 2025, each plaintiff, through counsel, filed timely motions in Chippewa County Circuit Court, the court that effectuated their foreclosure judgments, requesting disbursement of their remaining proceeds, as required under MCL 211.78t(6).[10]  Each plaintiff also requested interest on the surplus proceeds from the date of the filing of the foreclosure action to the date of the payment of the surplus.

The record before this Court does not indicate whether plaintiffs' motions to disburse have been acted upon.  However, a search of the Chippewa County Circuit Court online register of actions with regard to the last remaining plaintiff Victoria A. Sheffield's motion reveals that it was granted on April 29, 2026 and remaining proceeds were disbursed on May 15, 2026.[11]  Furthermore, at the June 2, 2026 oral argument, counsel for the sole remaining plaintiff confirmed that her proceedings to recover surplus proceeds pursuant to MCL 211.78t were completed, and that she was not provided related attorney fees, costs, interest, or the 5% sales commission from the proceeds as part of that recovery.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo.  A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint.  All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.  [*Schafer*, 515 Mich at 19-20 (quotation marks and citations omitted).]

"Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right

---

[8] While plaintiffs' notices of intent to claim their remaining proceeds and motions to disburse are not included in the lower-court record, plaintiffs moved this Court to allow them to supplement their appendix on appeal to include them, and this Court granted plaintiffs' motion "without prejudice to the ability of the case call panel to consider whether, or to what extent, these items are relevant and properly considered in deciding this appeal."  *Sheffield v Chippewa Co*, unpublished order of the Court of Appeals, entered November 4, 2025 (Docket No. 374645).  We find this supplemental information relevant to our decision and consider it.

[9] As noted, the statutory deadline for former property owners, such as plaintiffs, whose property was foreclosed and sold pre-*Rafaeli*, to file a notice of intent to seek their remaining proceeds was March 31, 2025, which is derived from MCL 211.78t(6) and the date *Schafer* was decided on July 29, 2024.  See *Hathon*, ___ Mich ___ at ___; 17 NW3d at 686-687.  See also *Schafer*, 515 Mich at 51.

[10] As noted, pursuant to MCL 211.78t(6), a claimant must file a motion with the circuit court in the same proceeding in which the judgment of foreclosure of the property was effective by the following October 1 to claim the remaining proceeds.

[11] <https://micourt.courts.michigan.gov/case-search/> (accessed May 21, 2026).  Under MRE 201(b) through (d), a court may take judicial notice of an adjudicative fact at any stage of a proceeding, including on its own motion.

of recovery." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (quotation marks and citation omitted).

This Court reviews "questions of constitutional law, including the constitutionality of a statute, de novo." *In re Petition of Kent Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket Nos. 363463, 363766, 363808, and 364114); slip op at 5. This Court also reviews "de novo whether the trial court properly interpreted and applied relevant statutes." *Id*.

## III. SUMMARY DISPOSITION OF PLAINTIFF'S CLAIMS

Plaintiff Sheffield[12] argues on appeal that the trial court erred in granting summary disposition with prejudice pursuant to MCR 2.116(C)(8) in reliance upon *Muskegon Co Treasurer*, which does not control because it involved post-*Rafaeli* tax-foreclosure sales, whereas her claim involves an unlawful taking that occurred pre-*Rafaeli*. Plaintiff contends MCL 211.78t's retroactive application to her pre-*Rafaeli* claims does not undo the takings that already occurred when defendants foreclosed and sold her property without notice or opportunity for her to obtain surplus proceeds because there was no mechanism for doing so in place. Plaintiff further argues that MCL 211.78t does not completely remedy the constitutional violations because it does not provide for interest or attorney fees, and requires the FGU to withhold a 5% sales commission from the proceeds. Therefore, plaintiff contends, in the context of the pre-*Rafaeli* claims at issue here, that MCL 211.78t is not the exclusive means for former property owners to recover their surplus proceeds, and *Muskegon Co Treasurer* does not support dismissal of her state-law claims.

Defendants respond that the *Schafer* decision and *Hathon* order addressed pre-*Rafaeli* claims and hold that MCL 211.78t is the exclusive means of obtaining surplus proceeds for such claimants. Further, plaintiff had constitutionally adequate notice of her right to claim her surplus proceeds in accordance with MCL 211.78t by virtue of the statute's enactment and the published caselaw that followed. Defendants argue that they properly retained the surplus proceeds unless and until plaintiff sought recovery pursuant to MCL 211.78t and plaintiff, in failing to comply with MCL 211.78t, has forfeited her right to claim her surplus proceeds. Further, defendants contend plaintiff improperly seeks fair-market value for her foreclosed property in her inverse condemnation claim when she is only entitled to surplus proceeds, and only if she follows MCL 211.78t. Finally, the defendant county treasurer contends she was acting within the scope of her executive authority and so is entitled to governmental immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., with regard to her retention of plaintiff's surplus proceeds.

---

[12] As previously noted, following the filing of the parties' briefing in this appeal, plaintiffs McDonald and Halstead were each dismissed as parties by stipulation, and plaintiff Strauser was dismissed without prejudice upon the parties stipulating that he is deceased, leaving plaintiff Sheffield as the sole remaining appellant in this appeal and we accordingly only be considering her arguments and refer to her as "plaintiff."

Plaintiff replies that: she is not seeking fair market value, but rather, the surplus proceeds and additional recovery to which she is entitled; she has availed herself of MCL 211.78t; and her claims may proceed regardless.

## A. APPLICATION OF MCL 211.78t TO PRE-*RAFAELI* CLAIMS

As already noted, this Court held in *Muskegon Co Treasurer* that "our Legislature intended MCL 211.78t as the sole mechanism by which a former owner of foreclosed property could obtain any proceeds remaining from the tax-foreclosure sale and satisfaction of the owner's delinquent taxes and associated costs." *Muskegon Co Treasurer*, 348 Mich App at 688. Citing *Nelson*, 352 US at 109-110, this Court reasoned that former property owners with constitutionally adequate notice of their right to claim surplus proceeds do not suffer a compensable taking if they do not avail themselves of the procedures to do so under MCL 211.78t, but rather have forfeited those proceeds. *Id*. at 699-704. *Muskegon Co Treasurer*, however, involved post-*Rafaeli* claims when the statutory mechanism to recover surplus proceeds was already in effect. *Id*. at 686.

The instant case is distinct in that it involves tax foreclosure sale of properties that occurred pre-*Rafaeli*. This is a material distinction because, in post-*Rafaeli* sales, the statutory scheme effectively prevents a taking of the property owner's surplus proceeds in the first place by requiring the FGU to notify the property owner of the right to claim the surplus before the foreclosure sale,[13] and providing the opportunity to claim the surplus under the mechanism set forth in MCL 211.78t. See, e.g., *Howard v Macomb Co*, 133 F4th 566, 572 (CA 6, 2025) ("Michigan's [amended, post-*Rafaeli*] procedures for collecting the surplus do not compensate the property owner for a taking. They prevent a taking from happening in the first place.").[14]

Pre-*Rafaeli*, the GPTA did not provide "for any disbursement of the surplus proceeds to the former property owner, nor [did] it provide former owners a right to make a claim for these surplus proceeds" (and of course the statutory presale-notice requirements involving the property owner's right to claim surplus proceeds did not yet exist). *Rafaeli*, 505 Mich at 447. Further, even after its enactment, MCL 211.78t did not provide any means for pre-*Rafaeli* claimants, such as plaintiff, to recover their surplus proceeds until July 24, 2024, when the Supreme Court gave *Rafaeli* full retroactive effect. *Schafer*, 515 Mich at 13, 15. Before then, MCL 211.78t(1)(b) "barred any claims for surplus proceeds for properties foreclosed prior to the July 2020 *Rafaeli* decision." *Id*. at 15. Accordingly, by the time *Schafer* was decided, "[o]ver three years [had] passed since 2020 PA 256 was enacted, and for over three years the statute has attempted to bar relief for individuals whose constitutional rights were violated." *Schafer*, 515 Mich 54 n 4 (ZAHRA, J., concurring).

Despite this distinction, *Schafer* leaves no doubt that *all* property owners must resort to the mechanism under MCL 211.78t to recover their surplus proceeds before pursuing state-law tort

---

[13] See MCL 211.78g(2); MCL 211.78i(7).

[14] "The decisions of intermediate federal courts are not binding on this Court, although they may be considered for their persuasive value." *People v Lucynski*, 509 Mich 618, 638 n 10; 983 NW2d 827 (2022).

and constitutional claims. *Schafer*, 515 Mich at 13, 15, 42, 45 (pre-*Rafaeli sales*). *Schafer* describes MCL 211. 78t as "creat[ing] a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Schafer*, 515 Mich at 45. See also *Jackson*, ___ Mich at ___; slip op at 15-17, 22-23 (reaffirming *Schafer*'s holding that MCL 211.78t applies retroactively to existing pre-*Rafaeli* claims). Again, MCL 211.78t(11) explicitly states that "[t]his section is the *exclusive* mechanism for a claimant to claim and receive any applicable remaining proceeds *under the laws of this state*." (Emphasis added.)

This is also confirmed by our Supreme Court's remand order in *Hathon*, ___ Mich ___; 17 NW3d 686 (2025).[15] *Hathon*, like this case, involved pre-*Rafaeli* foreclosure sales. Significantly, the Supreme Court reiterated that MCL 211.78t is the exclusive mechanism for a former property owner to recover surplus proceeds under state law. *Hathon*, ___ Mich at ___; 17 NW3d at 686. The Court continued that MCL 211.78t(11) offers a "mechanism" that "works within the confines of existing tax-foreclosure lawsuits filed in circuit court by the foreclosing unit of government without claimants having to file a counterclaim or initiating a new lawsuit against any person or entity," and that "[f]or a claimant to preserve their right to claim remaining proceeds under MCL 211.78t, they *must initiate the statutory process* by providing the foreclosing unit of government notice of their intent to seek remaining proceeds by March 31, 2025, using a form prescribed by the Department of Treasury." *Hathon*, ___ Mich at ___; 17 NW3d at 686-687 (emphasis added), citing MCL 211.78t(6); *Schafer*, 515 Mich at 49-52. *Hathon* therefore confirmed what *Schafer* decided; that in the context of pre-*Rafaeli* foreclosure sales: "Properly notified claimants must *first* utilize the statutory process provided by MCL 211.78t for recovery of remaining post-foreclosure sale proceeds before challenging the adequacy of or the application of that process as applied to them." *Hathon*, ___ Mich at ___ n 1; 17 NW3d at 687 n 1 (emphasis added). Plaintiff seeks a different result by arguing that *Muskegon Co Treasurer* is factually distinguishable, but this Court is, of course, bound to follow the subsequent decisions of our Supreme Court in *Schafer* and *Hathon*.[16]

However, the Court's statement that "[p]roperly notified claimants must first utilize the statutory process provided by MCL 211.78t" indicates that proper notice of the right to claim surplus proceeds is required before a former property owner is obligated to invoke MCL 211.78t to seek recovery of their rightful proceeds. *Hathon*, ___ Mich at ___ n 1; 17 NW3d at 687 n 1.

Turning to federal courts interpreting Michigan law, we reach essentially the same conclusion. Rather than try to "reinvent the wheel," as this same panel of this Court just held in the substantially similar pre-*Rafaeli Armour* decision:

> In 2025, the Sixth Circuit Court of Appeals held that a former property
> owner's failure to comply with the requirements of MCL 211.78t resulted in a

---

[15] *Hathon* was one of the consolidated cases considered in *Schafer*, 515 Mich 1.

[16] As this panel already noted in *Armour*: "*Hathon* is binding authority. As a final order, it contained a concise statement of the applicable facts, as well as the reasons for our Supreme Court's decision. Accordingly, it is binding on this Court." *Armour*, ___ Mich App at ___; slip op at 9 (citations omitted).

-11-

forfeiture of her claim to such proceeds. *Howard v Macomb Co*, 133 F4th 566, 570-572 (CA 6 2025).

This case and the federal precedent cited therein refute any claim that MCL 211.78t impermissibly places conditions on a federal constitutional claim or attempts to preempt federal law, as plaintiffs suggest. To the contrary, recognizing that "[t]he power to tax ends, and the duty to account for a taking begins, when a State confiscates more property than it is owed," the Sixth Circuit acknowledged Michigan's past deficiency and found that Michigan established a procedure to "correct this problem" by "now giv[ing] owners a chance to recover any surplus." *Id*. at 569-570.

Seventy years ago, the United States Supreme Court recognized that "nothing in the Federal Constitution prevents" foreclosure of a property owner to recover delinquent taxes when the state had procedures to ensure notice and the opportunity to contest the foreclosure sale before it occurred. *Nelson v City of New York*, 352 US 103, 109-111; 77 S Ct 195; 1 L Ed 2d 171 (1956). Evaluating the procedures in MCL 211.78t, the Sixth Circuit in *Howard* recognized that, "*Nelson v City of New York*, shows that this kind of process complies with the Takings Clause." *Howard*, 133 F4th at 570. By providing former property owners with "the opportunity to recover [their] surplus and set[ting] several reasonable steps for claiming it," the procedures in MCL 211.78t prevent a taking from happening. *Id*. at 572. "A county that allows property owners to obtain any surplus after a foreclosure and keeps the residual only if the owners do not seek it does not commit a taking" under federal law. *Id*. at 572.

Furthermore, the procedures of MCL 211.78t do not immunize government officials from releasing the taken property. That was the issue in *Williams*[ *v Reed*], 604 US 168[; 145 S Ct 465; 221 L Ed 2d 44 (2025)], which involves a claim under 42 USC 1983 resulting from an allegedly unlawful delay in processing of unemployment benefits claims. In *Williams*, "[t]he claimants did not ask the court to rule that they were entitled to unemployment benefits, [but] [r]ather, they simply asked the court to order the Department to promptly address their benefits claims." *Id*. at 172-173. Dismissal of their complaint for failure to address the administrative requirements that were a dead end effectively immunized the state officials from the alleged constitutional claims. *Id*. at 174. This is not the situation here. MCL 211.78t provides timelines and procedures that, if a plaintiff chooses to engage, requires the FGU to pay the amounts due. Dismissal of plaintiffs' complaint because they failed to follow these procedures is not violative of federal or state law. [*Armour*, ___ Mich App at ___; slip op at 9-10.]

Nothing in the present case directs a different result than that reached in *Armour*.

-12-

## B.  CONSTITUTIONALLY ADEQUATE NOTICE OF RIGHT TO CLAIM SURPLUS PROCEEDS UNDER MCL 211.78t ON PRE-*RAFAELI* CLAIMS

Notice is a "fundamental requirement of due process." *Kent Co Treasurer*, ___ Mich App at ___; slip op at 12 (quotation marks and citation omitted).  Constitutionally adequate notice is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id*. at 12 (quotation marks and citations omitted).  This Court has addressed the notice required in the post-*Rafaeli* context as follows:

> Given our Supreme Court's acknowledgement . . . that a former property owner's right to surplus proceeds from a tax sale is a constitutionally protected right, distinct from the owner's interest in the real property and survives the foreclosure process, we conclude that *the former property owner is also constitutionally entitled to receive notice from the FGU regarding the right to claim any surplus proceeds*.  This notice must be provided before the FGU can deprive the property owner of these surplus proceeds.  Vested property rights are protected by due process and a former property owner has a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties. [*Kent Co Treasurer*, ___ Mich App at ___; slip op at 13 (quotation marks and citations omitted; emphasis added).]

Therefore, notice is essential in this context.  Indeed, this Court has recognized that "it is imperative to provide explicit notifications that detail the right to claim any remaining proceeds . . . and the procedures specified in MCL 211.78t." *Kent Co Treasurer*, ___ Mich App at ___; slip op at 13.  "Integral to this Court's conclusion in *Muskegon Co Treasurer* was the fact that the [FGU] followed the statutory scheme by providing the [former property owners] with notices that adequately informed them of 'their right to claim any excess proceeds and told them how to express their intent to exercise that right.' " *Id*. at ___; slip op at 8, quoting *Muskegon Co Treasurer*, 348 Mich App at 696.

Whether constitutionally adequate notice has been provided depends on the individual circumstances.  See *Kent Co Treasurer*, ___ Mich App at ___; slip op at 13-14.  Plaintiff contends that defendants provided no notice of her right to claim her surplus proceeds, and the record contains no indication that defendants took any steps to notify plaintiff of her retroactive right to claim her surplus proceeds in accordance with MCL 211.78t(6), by publication, or otherwise.  Further, the parties do not assert that there is any statutory requirement that the FGU provide such

notice in the case of pre-*Rafaeli* tax-foreclosure sales.[17]

Defendants argue that plaintiff had actual notice of her retroactive right to claim surplus proceeds through the Legislature's enactment of 2020 PA 26 and our Supreme Court's decision in *Schafer*, 515 Mich at 13. Defendants argue that property owners are presumed to know the law relevant to their interests, and therefore that the Legislature need only enact and publish the law to provide sufficient notice to trigger claimants' obligation to seek recovery of surplus proceeds through the statutory mechanism.[18]

> [The Supreme Court] presume[s] that the citizenry knows the law, as long as the Legislature has enacted and published the law, and afforded the citizenry a reasonable opportunity to familiarize itself with its terms. This is true even when the government makes changes in the law affecting property rights. [*In re Rasmer Estate*, 501 Mich 18, 45; 903 NW2d 800 (2017) (quotation marks, citations, and alterations omitted).]

However, just as this Court found in *Armour*, "there is no evidence in the record that . . . plaintiff was prevented from filing a notice of intention outside of this statutory limitations period." *Armour*, ___ Mich App at ___; slip op at 8. In fact, during oral argument, counsel for the sole remaining plaintiff confirmed that her proceedings to recover surplus proceeds pursuant to MCL 211.78t were now complete.

## C. CHALLENGES TO THE ADEQUACY OF THE STATUTORY REMEDY

Although the Supreme Court in *Hathon* and *Schafer* confirmed that plaintiffs must first pursue recovery of surplus proceeds through MCL 211.78t(6), the Court did not address whether that remedy adequately redresses unconstitutional takings in the context of pre-*Rafaeli* tax-foreclosure sales.

---

[17] Defendants assert that

> there is no "statutory" requirement for counties or their treasurers to provide potential claimants with retroactive notice of the procedures of MCL 211.78t or of the risk that a claim for surplus proceeds could be forfeited by noncompliance. With regard to foreclosures occurring before the enactment of MCL 211.78t, there were no "statutory" notice requirements regarding the MCL 211.78t procedures at all.

[18] Defendants also assert that plaintiff's counsel represented the claimants in both *Schafer* and *Muskegon Co Treasurer*, and therefore that plaintiff's counsel's knowledge of plaintiff's obligation to seek recovery of her surplus proceeds under MCL 211.78t is properly imputed to her, making it "disingenuous" for plaintiff to now assert that she never had such notice. See, e.g., *Katz v Kowalsky*, 296 Mich 164, 170; 295 NW 600 (1941) (noting that "where a client is represented by an attorney, knowledge acquired by the attorney while acting within the scope of his authority is, by fiction of law, the knowledge of the client").

-14-

> The recognition and redress of constitutional violations are quintessentially judicial functions, required of us by the Separation of Powers Clause. See Const 1963, art 3, § 2. Our Court maintains primacy in interpreting the Constitution. . . . Further, while the Legislature cannot trump the Constitution itself, the Legislature may implement a remedial scheme that provides a means of vindicating the constitutional right at a level equal to a remedy this Court could afford. In those circumstances, we would be unlikely to duplicate the Legislature's efforts. But . . . this Court retains the authority—indeed the duty—to vindicate the rights guaranteed by our Constitution. That includes recognizing causes of action seeking money damages. Therefore, money damages are an available remedy for constitutional torts unless (1) the Constitution has delegated to another branch of government the obligation to enforce the constitutional right at issue, . . . or (2) another branch of government has provided a remedy that we consider adequate . . . . [*Bauserman v Unemployment Ins Agency*, 509 Mich 673, 687; 983 NW2d 855 (2022) (citations omitted).]

Therefore, if the remedy under MCL 211.78t adequately vindicates the constitutional violation, a claim for money damages is not available. *Id*. at 681, 687. Conversely, if the legislative remedy does not afford plaintiffs a constitutionally adequate remedy to redress the violation, they may still have an actionable takings claim for *Rafaeli*-based damages.[19]

Plaintiff asserts that MCL 211.78t does not provide a constitutionally adequate remedy for the takings in the context of her pre-*Rafaeli* claims because, although MCL 211.78t(6) provides for the return of her surplus proceeds, the statute does not provide for attorney fees or interest from the time of the foreclosure sale. Cf. *Knick v Scott Twp*, 588 US 180, 190; 139 S Ct 2162; 204 L Ed 2d 558 (2019) (holding that "compensation must generally consist of the total value of property when taken, plus interest from that time"); *Miller Bros v Dep't of Natural Resources*, 203 Mich App 674, 690; 513 NW2d 217 (1994) ("A person has a constitutional right to interest from the date of a taking until the date of compensation"). Further, plaintiff complains that the statutory remedy is inadequate because MCL 211.78t(9) requires that a sales commission equal to 5% of her proceeds be withheld. That deduction is in addition to deductions for the FGU's expenses incurred "in connection with the forfeiture, foreclosure, sale, maintenance, repair and remediation of the property." MCL 211.78t(12)(b)(*ii*). See *Miller Bros*, 203 Mich App at 685 ("The purpose of just compensation is to put property owners in as good a position as they would have been in had their property not been taken from them."); *Rafaeli*, 505 Mich at 484 (holding that the FGU may retain proceeds equal to the fees "reasonably related to the foreclosure and sale of the property—no more, no less"). According to plaintiff, MCL 211.78t therefore does not completely redress the unlawful taking she suffered, leaving her entitled to pursue her remedies through her claims for damages.

---

[19] In *Jackson*, ___ Mich at ___; slip op at 19, the Supreme Court held in a different context that "[b]ecause MCL 211.78t does not provide plaintiffs with any possibility of relief, MCL 211.78t does not govern this dispute and claimants should proceed through standard processes of inverse condemnation, separate from the statutory process of MCL 211.78t."

It does not appear that our appellate courts have squarely addressed the constitutional adequacy of the statutory remedy in this regard in the context of pre-*Rafaeli* sales in published caselaw, although *Muskegon Co Treasurer* recognized that the statutorily required 5% sales commission implicates "the question whether our Legislature actually [fully] addressed [sic: remedied] the constitutional infirmity of the prior version of the GPTA."[20]   *Muskegon Co Treasurer*, 348 Mich App at 690.

Even if these assertions have merit, however, it is not necessary for this Court to address the adequacy of the statutory remedy at this time.  Again, our Supreme Court has directed pre-*Rafaeli* claimants to first avail themselves of the statutory mechanism:

> We take no position as to the merits of the plaintiffs' assertions that they are also entitled to recover interest and attorney fees or their claim that the sales commission under MCL 211.78t(9) is unconstitutional.  However, litigation of these claims is premature.  *Properly notified claimants must first utilize the statutory process provided by MCL 211.78t for recovery of remaining post-foreclosure sale proceeds before challenging the adequacy of or the application of that process as applied to them.* [*Hathon*, ___ Mich at ___ n 1; 17 NW3d at 687 n 1 (citations omitted, emphasis added).]

Accordingly, plaintiff must pursue recovery of her surplus proceeds through the mechanism provided by MCL 211.78t(6) before challenging its adequacy through her state tort and state and federal constitutional claims.[21]  *Id.*

In sum, under *Schafer* and *Hathon* plaintiffs must first resort to MCL 211.78t(6) to recover their surplus proceeds.  Because they had not done so at the time of defendants' summary disposition motion, the trial court properly dismissed plaintiffs' state tort and state and federal constitutional claims.

---

[20] The property owners in *Muskegon Co Treasurer* challenged the constitutionality of the 5% sales commission under MCL 211.78t(9), but this Court declined to consider the issue because those owners claims for surplus proceeds were denied and they were therefore never subjected to the commission such that the issue was not ripe for review.  *Muskegon Co Treasurer*, 348 Mich App at 703.  See also *Kent Treasurer*, ___ Mich App at ___; slip op at 16.

[21] As noted above, the supplemental information plaintiff has provided indicates that she has availed herself of the statutory mechanism under MCL 211.78t(6) by timely initiating claims to recover her surplus proceeds and filing the required motion to disperse her remaining proceeds.  Further, the Chippewa County Circuit Court online register of actions with regard to plaintiff's disbursement motion reveals that it was granted on April 29, 2026 and remaining proceeds were disbursed on May 15, 2026.  Further, during oral argument plaintiff's counsel stated that proceedings to recover surplus proceeds pursuant to MCL 211.78t were completed.  While she may now attempt to avail herself of any procedural mechanisms available to pursue her remaining claims in that case, that matter is not currently before this Court.

## D.  DISMISSAL WITHOUT PREJUDICE

Although the trial court's dismissal was proper, it should have been without prejudice.

> A dismissal *with* prejudice amounts to an adjudication on the merits and bars a further action based on the same facts.  But a dismissal without prejudice is not a dismissal on the merits.  Our Supreme Court has described that the term "without prejudice" signifies a right or privilege to take further legal proceedings on the same subject, and show[s] that the dismissal is not intended to be *res adjudicata* of the merits.  A dismissal of a suit without prejudice is no decision of the controversy on its merits, and leaves the whole subject of litigation as much open to another suit as if no suit had ever been brought.  [*Grimmer v Lee*, 310 Mich App 95, 102; 872 NW2d 725 (2015) (quotation marks and citations omitted).]

Here, the trial court did not adjudicate the substantive merits of plaintiffs' state-law tort and state and federal constitutional claims, yet dismissed them with prejudice on the basis that plaintiffs were required to use the mechanism provided by MCL 211.78t to recover their surplus proceeds.  However, because plaintiffs are entitled to just compensation to redress the taking of their surplus proceeds from their pre-*Rafaeli* sales, they should retain their prerogative to reassert their claims to the extent that the statutory mechanism does not afford constitutionally adequate relief.  Therefore, the dismissal with prejudice was premature.  See *Armour*, ___ Mich App at ___; slip op at 2.

We affirm the trial court's order granting summary disposition pursuant to MCR 2.116(C)(8), but reverse that ruling to the extent it was made with prejudice, and remand to the trial court for entry of an order of dismissal without prejudice.  We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense